THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS FABING, Defendant-Appellant.

First District (5th Division)   No. 62439

Opinion filed September 24, 1976.

James J. Doherty, Public Defender, of Chicago (Michael Jackson and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of possession of both cannabis and a controlled substance in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(d)) and sections 208(c)(1) and 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, pars. 1208(c)(1), 1402(b)) and placed on three years' probation. On appeal, he contends he was not proved guilty beyond a reasonable doubt of either actual or constructive possession of a prohibited substance.

At trial the following pertinent evidence was adduced.

*For the State*:

Prior to any testimony, defendant stipulated as follows:

"* * * as to the chain of evidence and the lab report regarding the substances found in this case which the State would seek to introduce into evidence.

* * * that on February 10, 1974, Officers West and Richler of the Gang Crimes South, Investigation Unit of the Chicago Police Department, submitted and carried to the Chicago Police Department Crime Laboratory the following exhibits: a clear bag containing crushed green plants, total weight being 136.11 grams, and also nine blue and orange capsules, total weight 2.7 grams; that the exhibits were tested by George J. Halko, who is a chemist with the Chicago Police Department Crime Laboratory, and that he found Exhibit No. 1 to contain cannabis sativa, commonly known as marijuana, and Exhibit No. 2 to contain a derivate of barbituric "acid, and that these exhibits were then given back to Officer West for the chain of custody."

Defendant also stipulated that he and his wife were joint tenants of the apartment in question.

*Thomas West*

He is a Chicago police officer. At about 9:30 p.m. on February 9, 1974, he and several other officers went to an apartment at 8600 South Muskegon, Chicago, armed with a search warrant for narcotics. They knocked on the door and announced their office. From inside the apartment they smelled marijuana and heard people running. They then forced open the side door leading into the kitchen. There, they were confronted by defendant holding a dog. Defendant yelled, "Stand back; it bites," and then released the dog. An officer fired at the dog and it ran out of the apartment.

Defendant and six other occupants were assembled in the living and dining rooms and searched. In the top pocket of defendant's denim

jacket, they found an amount of U.S. currency and a plastic bag containing crushed green plant. They informed defendant he was under arrest and continued their search of the premises. In the bedroom dresser they found a quantity of "additional marijuana." They also found guns "secreted up under the dresser" and some pills in a bag of dog food in the pantry off the kitchen. At this point defendant asked, "What am I under arrest for?" After he was told the specific charges and advised of his rights defendant declared, "All this stuff in here is mine. It doesn't belong to any of the other people." He was taken to the district station and the narcotics, which subsequently became the subject of the above stipulation, were taken to the crime lab.

On cross-examination, he identified defense exhibit number one as being a jacket "similar" to the jacket that defendant wore at the time of his arrest. He stated that the weapons found were not registered to defendant and acknowledged that he found no pills on defendant's person. When he found the pills in the kitchen pantry, defendant was in the dining room with the other occupants. That is where defendant said that the "stuff" belonged to him.

*For defendant:*

*Walter Thomas Urbanowski, Jr.*

He and defendant were alone in the kitchen when police entered. Also in the apartment were Phil Kobus, Dwayne Nowakowski, Robert Sachko, Ricky Devon and a girl named Corrine. The police searched him and found "contraband." They also searched defendant, however, they found no "narcotics" on him. Although in the apartment the entire time he did not see the police recover any pills. He first learned of the recovery of the pills in the newspaper the following day.

When he first came to the apartment, no one was smoking marijuana. He brought with him a "little bit, a dime's worth of marijuana." Between his arrival and the arrival of police, they prepared to watch a movie, drank alcohol, and smoked marijuana.

On cross-examination, he acknowledged being friends with defendant for 2½ years. He stated he started smoking marijuana at 9:15 p.m. that evening, and had consumed two shots of gin by the time police arrived. He admitted that at the time of the search he had a pocket knife on him, however, he denied having any marijuana on his person. Defendant was searched twice—once in the kitchen and once in the living room. He was right next to defendant during both searches and all he saw police take from him was some money.

Defendant has a jacket similar to defense exhibit number one which defendant frequently wears. However, he could not identify it as the same jacket because "all those jackets look alike."

*Dwayne Nowakowski*

He lived 2½ blocks from defendant. He had been at the apartment "lots of times." At the time of the arrests, Phil Kobus was living with defendant. Defendant's wife was not living in the apartment.

On cross-examination, he admitted that he had a glass of gin and smoked some marijuana before police arrived. He saw police frisk defendant, but does not remember defendant saying anything to the police. He was charged with being an inmate of a disorderly house.

*Phillip Kobus*

In February, 1974, he was living with defendant at 8600 South Muskegon. He had resided with defendant for six to eight months previously. When police entered the apartment, he was in the dining room, watching T.V., drinking gin, and smoking marijuana.

The apartment was a "clubhouse" for 10 to 15 people who came over almost everyday. No one watched these people when they were over. People in the club had free access to the apartment.

He was searched but nothing was found on his person. Police did find marijuana behind the refrigerator in the front room, however, he does not recall any other marijuana being found. He saw defendant searched in the front room. Although police did find $2,300 to $2,400 on defendant, they found no "contraband" on him.

Although originally purchased by defendant, the dog Ullyses was his and defendant's. They both cared for the dog. He fed the dog everyday and did not see contraband in the dog food bag when he last fed the dog at 7 a.m. on the day of the arrests. The officers never told them they found contraband in the bag.

*Defendant on his own behalf*

He has lived at 8600 S. Muskegon since December 10, 1973. Originally, he lived there with his wife, however, she left him a week before his arrest. Phil Kobus also lives there and other people in the neighborhood are over all the time. Urbanowski and he were in the kitchen when police arrived. Everyone else was in the dining room and the front room. He was searched by Officer West when police first arrived and nothing was found on his person except money. There were 156 bills in his pocket—the remainder of a lump sum social security disability payment. He was again searched in the front room and no contraband was found on him. The weapons found were his. Some were registered, others were collector's items and therefore not registered. Police found marijuana in the apartment behind the radiator in the front room and on the dining room table.

Prior to the arrival of police he had been smoking marijuana. He did not place the pills in the dog food bag and knows nothing about them.

On cross-examination he denied ever saying the "stuff" that was

recovered belonged to him. The officer never showed him any pills or any marijuana, except that found on the dining room table.

OPINION

■■ Defendant first contends there is a reasonable doubt as to his guilt on the charge of possession of the marijuana allegedly found on his person because: (1) Urbanowski admitted bringing marijuana to the party and equivocated at trial when asked if he possessed "contraband" at the time of his arrest, and (2) the police failed to fingerprint the evidence and record defendant's incriminating statement. The inference defendant draws from these factors is that the police actually found the marijuana on Urbanowski, but inadvertently arrested defendant in the confusion which surrounded the search and arrests.

We will not overturn a conviction for possession unless the evidence is "so unreasonable, improbable or unsatisfactory, as to create a reasonable doubt of guilt." (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372.) Here we do not believe that the facts argued by defendant raise a reasonable doubt as to his guilt.

Although Urbanowski admitted he brought "a dime's worth" of marijuana (½ ounce) to defendant's apartment, the evidence at trial shows that 136.11 grams or nearly five ounces were found in the apartment. Thus, Urbanowski clearly did not bring over all the marijuana found.

Urbanowski did testify that "contraband" was found on his person, but the exact nature of this "contraband" is unclear. Perhaps he was alluding to the knife he admittedly carried the night of the arrests. However, he specifically denied having "any marijuana" on his person at the time police searched him and we thus do not find the equivocation in his testimony which defendant argues is present.

Officer West's testimony that he found the marijuana in the top pocket of defendant's denim jacket also lessens the possibility that a mistaken arrest was made because Urbanowski wore a shirt not a jacket the night of the arrests.

Finally, in regards to this point, we note that even if it was shown that the marijuana originally came from Urbanowski and was given to defendant during the party, defendant's possession would still have been established.

Both the lack of fingerprint evidence and the failure of police to record defendant's incriminating statement, while factors possibly worth considering in a close factual situation (*People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320; *People v. Faulkner* (1967), 83 Ill. App. 2d 54, 226 N.E.2d 467), certainly are not dispositive in a case where there is positive police testimony that marijuana was found on defendant's person. We are aware that defendant, Kobus, and Urbanowski all testified that no

marijuana was found on defendant, however, their bias is obvious. In a bench trial the credibility of the witnesses and the weight to be accorded their testimony is an issue of fact to be resolved by the judge. (*People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) We do not find the trial court's judgment on these matters to be so unreasonable as to warrant a reversal.

Defendant next contends that he was not proven guilty beyond a reasonable doubt of possession of the marijuana found in the bedroom dresser. He agrees "that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the Court where a jury is waived, a reasonable doubt as to his guilt." (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-309, 178 N.E.2d 361, 363.) He argues, however, that additional circumstances are present here, which the State failed to rebut and which cast serious doubt on his guilt. Specifically, he alleges that the State failed to introduce any evidence proving that he rather than his estranged wife or his co-tenant was owner of the cannabis found.

Although possession of narcotics may be joint (*People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767), in cases involving joint control of an area, courts generally look for corroborating evidence connecting defendant to the contraband found. Thus, in *People v. Wolski* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 308, defendant's conviction was reversed where it appeared just as likely that his brother and roommate or others having access to their apartment, possessed the marijuana found. Similarly, in *People v. Bolden* (1968), 96 Ill. App. 2d 129, 237 N.E.2d 748, the court reversed defendant's conviction for illegal possession of a hypodermic needle found in an apartment occupied jointly by he and his wife because the evidence indicated that his wife, and not he, was the drug addict.

Here, however, corroborating evidence was presented. In addition to defendant's control of the premises, there are four other factors indicating that he possessed the marijuana found in the bedroom dresser. First, police found defendant's guns in the same dresser in which the marijuana was found. Second, he admitted that the contraband was his and belonged to no one else. Third, he admitted at trial he had been smoking marijuana the night he was arrested and, fourth, police found marijuana on his person. These factors are corroborating evidence associating defendant to the contraband found, and remove any reasonable doubt as to his guilt.

■■ Defendant also contends that he was not proved guilty beyond a

reasonable doubt of possession of the narcotics found in the dog food bag. His argument in support of this contention is the same as his previous argument regarding the marijuana found in the dresser. Others, he insists had access to the dog food bag and are as likely as he to have possessed the pills found by the police.

Again, we look to the corroborating evidence adduced at trial linking defendant to the pills. He admitted to the arresting officers that he owned all the "stuff" found—including the pills in the dog food bag. This incriminating statement made after he was warned of his constitutional rights corroborates the inference of ownership which arose from the fact that the pills were found in a bag of dog food owned by him.

Finally, defendant contends that the State failed to prove that the substance discovered on him was marijuana. Because Officer West testified that he confiscated two bags of crushed green plant and the stipulation entered into at trial refers to only one bag of crushed green plant, he argues that it is unclear whether the bag tested by the chemist was that taken from his person or the bedroom dresser, or a combination of both. As a consequence he insists the State never proved that the substance discovered on him was marijuana.

■■ We note that defendant does not contend that the substance analyzed came from other than his apartment. He waived proof of the chain of custody by agreeing that the stipulation dealt with the substances found in this case. (See *People v. Buford* (1974), 19 Ill. App. 3d 766, 312 N.E.2d 796.) Whether the substance analyzed came from his pocket or his dresser or a combination of both is of no consequence. Adequate evidence was adduced at trial to prove that he had possession of both the substances and, therefore, the State has proved the charge of illegal possession.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.