THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDGAR CONNOR *et al.*, Defendants-Appellants.

First District (5th Division)   No. 62946

Opinion filed February 17, 1978.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendants were indicted for possession of more than 500 grams of marijuana. (Ill. Rev. Stat. 1973, ch. 56½, par. 704(e).) In a bench trial, both defendants were found guilty as charged. Defendant Edgar Connor was sentenced to two to six years in the penitentiary, and defendant Martha Connor was sentenced to five years probation conditioned on her performing, during the first six months, voluntary services in the community for one weekend every 30 days. Prior to trial, defendants made a motion to suppress as evidence items removed from a vehicle. The motion was denied. On appeal, defendants contend that the trial court erred in denying their motion to suppress where a stop by policemen was an unreasonable intrusion into defendants' privacy as protected by the fourth amendment to the United States Constitution. Defendants also contend that they were not proved guilty beyond a reasonable doubt, since marijuana belonging to third persons was found

in the back seat of defendants' vehicle and defendants were unaware of the marijuana's presence. We affirm.

At the outset, we will consider the issue involving the motion to suppress. The following relevant evidence was adduced at the hearing on the motion. Gerald Ducek, a Chicago police officer, called by defendants testified that on January 11, 1974, he saw defendants sitting inside a yellow vehicle which was parked at approximately 2410 West 81st Street. Both defendants were in the front seat of the vehicle. Martha Connor was to the right of the driver, Edgar Connor. No on else was in the vehicle. However, from time to time, someone, other than defendants, was around the vehicle. Ducek further testified that no laws were being violated and he was not aware of any warrants against defendants. He then kept defendants under surveillance for a period of approximately one hour. During the hour, defendants did not commit a crime. At about 1 p.m., Ducek approached the vehicle in order to get a reason for it being in the area. He testified that when he approached the vehicle, Edgar Connor began to pull out in an attempt to drive away and as he pulled away, he did not commit a crime. Ducek then was in civilian dress, but, as Connor pulled away, Ducek identified himself as a police officer. He stopped in front of the vehicle and asked the driver "to hold on a minute." Edgar Connor stopped.

Ducek further testified that when he asked Edgar Connor for his driver's license, he could not produce a license. Ducek then conducted a search and obtained certain items.

Ducek testified that the surveillance was conducted because he was working on a crime pattern involving a male Negro who was robbing finance companies on Western Avenue from approximately 7600 south to 10,000 south. Robberies had been committed on November 7, 1973 and January 3, 1974. Ducek had a description of the robbery suspect. He was a "male Negro 25 to 30 years of age, five eleven to six feet, 160 to 175 pounds, black hair, black complexion, he was supposed to be wearing a three quarter length coat, silver watch, gold ring, gold frames, dark glasses, platform shoes." Also, Ducek testified that his attention was drawn to the vehicle that defendants were sitting in because Edgar Connor, the driver, resembled the above description in that he was a Negro with black hair who was "around five foot eleven, six feet tall from where he was sitting in the vehicle." During the period of surveillance, a black man came to the vehicle and had a conversation with defendants. He then left and came back after 15 minutes. After another conversation, the man left again. Ducek testified that he saw this happen twice. There were no other activities outside of the vehicle which was parked at a public aid office.

When Ducek stepped up to the vehicle, it was in motion. After Edgar

Connor failed to produce his driver's license, Ducek asked him to step out of the vehicle. Connor complied with the request. Ducek further testified that he noticed an open bottle of wine in the vehicle. He placed Edgar Connor under arrest and recovered the bottle. Large, clear plastic bags of "crushed green plant" were found in the rear of the vehicle.

On redirect examination, Ducek testified that Edgar Connor had a heavy beard at the time of the arrest. He also testified that most Negroes have black hair.

■■ Defendants contend that the trial court erred in denying their motion to suppress evidence obtained as a result of the stop. They contend that the police officer had no reasonable grounds to stop them at the time in question. Our concern is whether there were specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the stop. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The circumstances justifying the stop or intrusion must be based upon the police officer's reasonable belief that criminality is afoot. (*People v. Montgomery* (1977), 53 Ill. App. 3d 298, 368 N.E.2d 752; *Terry.*) Section 107—14 of the Code of Criminal Procedure of 1963 provides in pertinent part:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions." (Ill. Rev. Stat. 1973, ch. 38, par. 107—14.)

The legislature enacted this statute in order to codify the principle in *Terry* relating to stops. *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

A reviewing court will affirm the result reached by the trial court in ruling on the motion to suppress evidence, unless the ruling was manifestly erroneous. (*People v. Berry* (1977), 54 Ill. App. 3d 647, 370 N.E.2d 26; *People v. Rizzo* (1977), 49 Ill. App. 3d 105; 363 N.E.2d 100.) We cannot say here that the denial of the motion to suppress was manifestly erroneous. Officer Ducek's stop of defendants was reasonable, since it was reasonable for the officer to infer that defendants had committed or were about to commit a robbery. (See *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537.) There is strong evidence before us that the stop was justified by specific and articulable facts.

■■ Officer Ducek testified that he approached Edgar Connor's vehicle in order to get a reason for it being in the area. It was an area which had recently been plagued by robberies. For a period of one hour,

the vehicle was parked in the area. The officer had a description of the robbery suspect, and he testified that Edgar Connor resembled the description. A man repeatedly came to the vehicle, conversed with defendants, and then left them. We believe that the record "does not disclose policemen on the prowl." (*People v. Howlett* (1971), 1 Ill. App. 3d 906, 274 N.E.2d 885.) The police officer had more than a "bare suspicion or hunch" that the vehicle contained someone who had committed or was about to commit a crime. (*People v. Schlottman* (1976), 37 Ill. App. 3d 62, 65, 344 N.E.2d 8.) Therefore, because of the above factors, we decline to upset the trial court's ruling on the motion to suppress evidence obtained as a result of the stop. See *People v. Staples* (1971), 1 Ill. App. 3d 922, 275 N.E.2d 259.

We now turn to defendants' contention that they were not proved guilty beyond a reasonable doubt of the possession of marijuana. (Ill. Rev. Stat. 1973, ch. 56½, par. 704.) Defendants argue that they were unaware of the marijuana, since it was found in the back seat of their vehicle and the marijuana belonged to third persons. At the trial, the following pertinent evidence was adduced.

It was stipulated that the vehicle registration and Illinois license plates were issued to a 1972 Chevrolet utility vehicle which was titled in the name of Edgar Connor. It was also stipulated that a laboratory analysis showed that the green plant was 915.30 grams of marijuana. Officer Gerald Ducek testified as a witness for the State. Basically, he reiterated the testimony given at the hearing on the motion to suppress. In addition, he testified that at the time in question, he was working with his partner, Officer Robert Wagner. During the surveillance, the man who stood by the Chevrolet vehicle periodically went to the window of an unemployment office, appeared to be looking inside the office, and then walked south on Western Avenue. At the end of the surveillance, the officers drove their squad car across Western Avenue in order to talk to defendants. The man standing by Connor's vehicle began walking south on Western Avenue. On foot, Wagner proceeded after the man. As Edgar Connor was arrested, Wagner returned to Connor's vehicle and Ducek told him about the wine bottle in the back of the vehicle. Wagner got into the vehicle to retrieve the bottle. Ducek further testified that Wagner held up a bag of crushed green plant. Ducek then asked Martha Connor to get out of the vehicle.

Robert Wagner, called as the next witness for the State, testified that he is a Chicago policeman and was Officer Ducek's partner on January 11, 1974. He corroborated Ducek's testimony. Also, Wagner testified that on January 11, 1974, he patrolled in an unmarked motor vehicle. During the one hour of surveillance, Ducek and Wagner remained in their vehicle. Wagner further testified that during the hour, no one got into or out of

Connor's vehicle. When he proceeded on foot after the man who had been standing by Connor's vehicle, Wagner was able to stop the man. Wagner noted the man's name and address, patted him down, and let him go. Wagner then returned to Connor's vehicle and went into the vehicle, where he found a bottle of wine in the back seat. On the seat, he also discovered in plain view, four small white envelopes containing crushed green plant. In the middle of the floor of the back seat, there was a large, open, white plastic bag with a clear plastic bag inside. The white bag was in plain view. Both bags contained crushed green plant. On the basis of his police experience, Wagner concluded that the green plant was marijuana.

At the police station, Wagner again searched Connor's vehicle. He found a bayonet and a large box of white envelopes. In addition, he found a chipped shot glass.

After the State rested its case, Betty Davis testified that she was the daughter of defendants, and she was in the company of her mother and father on January 11, 1974. Davis and defendants rode to an unemployment office, located at 81st and Western, in a gold Chevy Blazer. It had two front bucket seats and a big back seat. Davis testified that she sat in the back seat and her mother did the driving. When Davis got into the vehicle, she saw only one item, a plastic bag containing some shoes. The bag was on a floor behind the back seat. She did not notice anything unusual in the vehicle.

Davis testified that on the way to the unemployment office, Martha Connor stopped at 69th and Carpenter to pick up Ray and Tommy Howard who were going to the office. Ray and Tommy Howard came out of a lounge and sat in the back of the Blazer with Davis. Both men had a brown paper bag containing clothes. They put their bags in the space behind the back seat. At about 9:30 a.m., the Blazer got to the unemployment office. Edgar Connor, Ray Howard, and Tommy Howard went in the office. Later, Martha Connor went in the office, and Edgar Connor came out and sat in the Blazer. Davis further testified that she then went in the office and her mother came back out to the Blazer. Davis and her mother took turns standing in line for Edgar Connor. Hundreds of people were in the office. Edgar Connor finished what he had to do in the office and returned to his vehicle. Edgar, Martha, Davis, and Ray waited in the vehicle for Tommy. In addition, Davis testified that, while they waited, she went in the office to use the bathroom. As she left the bathroom, Ray came in the office, and she heard Ray tell Tommy that "they had found the herbs."

Edgar Connor took the stand. He substantially corroborated the testimony of Davis. Also, he testified that the brown paper bags remained rolled up while he was in the Blazer; he did not look inside of the bags. He

went in the office to file for his "unemployment." After he finished, he returned to his vehicle and got in the driver's seat. He indicated to Ray that he had to be downtown and Ray should go back in the office "to hurry his brother up." Davis then said that she would tell Tommy, since she had to go to the washroom in the office. Edgar Connor further testified that Davis went in the office, but he "sent Ray in, and that's when he was stopped by the police." Two police officers had gotten out of their car. An officer approached the Blazer. It was parked at the curb and the motor was not running.

The policeman, who had approached the Blazer, asked Edgar Connor about his driver's license. Martha Connor then said that she was the driver. Edgar Connor testified that when Officer Wagner got in the Blazer and searched it, Wagner began "reaching under the seats and opening the fellow's bags in the back, and that's when he pulled up the bags and marijuana and the wine, and just told us we were under arrest." Edgar told the officer that the bags and wine were not his property, and Edgar told him about the quip in the unemployment office. Also, Edgar told the officer that he should have held Ray. Edgar further testified that he was unaware of the marijuana's presence in his vehicle.

Martha Connor testified in her own behalf. She substantially corroborated the testimony of Edgar and Davis. In addition, she testified that when Ray and Tommy went in the unemployment office, they left their brown bags in the Blazer. In the office, Ray approached Martha and asked if he could use the plastic bag which was in the Blazer. Martha gave her permission. She told Ray to take the shoes out of the bag. He then left the office for a few minutes and went out to the vehicle before returning.

■■ A conviction for possession will not be overturned unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Fabing* (1976), 42 Ill. App. 3d 379, 383, 355 N.E.2d 719; *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) After reviewing the record at hand, we must conclude that the trial court did not err in holding that there was sufficient evidence to establish defendants' guilt beyond a reasonable doubt.

■■ It is undisputed that when the marijuana was found in the Blazer, defendants had control over the vehicle. It is settled "that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt." (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-309, 178 N.E.2d 361.) Thus, in the present case, there is an inference of knowing

possession. We do not believe that this inference was overcome by the testimony of defendants and Davis. The bias of those individuals is obvious. We note that in a bench trial, the credibility of the witnesses and the weight to be given their testimony is an issue of fact for the judge to resolve. *Fabing.*

Officer Wagner testified that the envelopes and bag of marijuana were in plain view in Connor's vehicle. Furthermore, defendants, as they sat in the vehicle, were in close proximity to the marijuana for a considerable amount of time. The evidence serves to establish knowing possession of marijuana. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.