THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* THOMAS CRAWFORD *et al.*, Defendants-Appellees.

Second District  No. 77-540

Opinion filed October 19, 1978.—Rehearing denied November 20, 1978.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the People.

Thomas P. Stepanich and Robert P. Will, Jr., both of Waukegan, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal is a consolidation of three causes brought against the defendants herein. In cause No. 77 CF 134 defendants Metzer and Crawford were indicted for the armed robbery of one George Colburn on March 12, 1977; for the armed robbery of Walter E. Suman on March 12, 1977; and for aggravated battery committed upon Colburn by striking him with a shotgun. In cause No. 77 CF 147 an information was filed against Metzer charging him with possession of a sawed-off shotgun, possession of cannabis, possession of a switchblade knife and carrying a

concealed weapon. In cause No. 77 CF 148 defendant Keto was charged by information with the armed robbery of Colburn, the armed robbery of Suman and aggravated battery as to Colburn. Motions were respectively made (1) to suppress "in court" identification at trial by the victims; (2) to suppress confessions by Crawford and Metzer; and (3) to suppress physical evidence, *viz.*, the sawed off shotgun, pistol, the switchblade knife and the more than 30 grams of cannabis seized from the car of the defendants on the morning of March 12, 1977.

All charges are still pending in the circuit court of Lake County. It would also appear that the motions to suppress the "in court" identifications and the confessions are also still undisposed of in the trial court. The State's Attorney of Lake County has appealed from the order of the trial court suppressing the "evidence." It would appear, and the parties have indicated, that these orders refer to the physical evidence only.

The sole issue presented herein is whether the trial court properly suppressed the evidence seized from the defendants' car at approximately 5 a.m. on March 12, 1977.

The only witness to testify at the hearing on the motion to suppress the physical evidence was John Angelos, a Waukegan police officer, who, on March 12, 1977, was on routine patrol in an unmarked squad car. At 5 a.m. on that day he was driving toward the lakefront area of Waukegan. There had been numerous reports of vandalism at concession stands along the beach there. As he was driving by an area called North Beach he noticed in his rearview mirror defendants' car turn on its lights and drive away from the beach. The officer had not noticed the car previously because it had not had its lights on until he passed by. The car had been parked in a parking area adjacent to a concession stand, approximately 5 feet from the beach itself and approximately 10 feet from the concession stand. The officer turned his own vehicle and followed defendants' car as it drove away from the beach. Angelos testified that he did so because the car was parked "where it should not have been" as a Waukegan City Ordinance prohibited being in the beach area between 9 p.m. and 6 a.m. He further testified that signs to that effect were prominently displayed in the parking area.

Officer Angelos caught up with defendants' auto and continued to follow it for a few blocks. He observed at least three subjects in the front seat who kept turning and looking at him in what the officer felt was a furtive manner. Approximately 1-2½ miles from the beach Angelos turned on his light and pulled defendants' car to the curb.

After both cars had stopped, Angelos approached defendants' vehicle, identified himself, and asked defendant Metzer for his driver's license. Metzer produced a Minnesota driver's license and stated that he had been

living in Illinois for three to four months. Angelos then advised Metzer that his license was not valid because of the length of time he had been in Illinois and that he was under arrest for driving without a valid license. As Angelos opened the front door of the car for Metzer to get out, Metzer told the officer that he was a paraplegic and could not leave the car without assistance. When the door was open Angelos observed an empty holster by Metzer's feet. Angelos then requested the two front-seat passengers to step out of the car and conducted a frisk search. Another officer then arrived and conducted a frisk of Metzer and a cursory search of the vehicle's interior. Various weapons and a quantity of cannabis were found on the defendants and in the car.

The answer to the question of whether the trial court correctly ruled that these items were products of an illegal search is dependent upon whether the officer had a right to stop the car and ask for Metzer's license. His actions after this request were entirely proper. Officer Angelos had a right to arrest Metzer for not having a valid license. Once having done so he had a right to ask Metzer to leave the car and to look in the car when Metzer was unable to leave. The empty holster in plain view when the door was open was grounds to search both the occupants and the car itself.

Officer Angelos' request for Metzer's license was part of what has been called an investigatory field stop. Such stops are controlled by section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—14), which provides as follows:

> "Temporary Questioning without Arrest.) A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

The above statute is a partial codification of the holdings of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. (See *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488, and analysis therein.) Those cases require that the stop itself must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.

The validity of all searches, even limited ones such as in this case, must be determined from the particular facts and circumstances of each case.

In making this determination an objective standard is to be applied. Mere subjective suspicion or hunch is not enough. The key question is whether the facts available to the officer at the moment of the stop warrant a man of reasonable caution to believe that the action taken was appropriate. *People v. Hellemeyer* (1975), 28 Ill. App. 3d 491, 328 N.E.2d 626.

■■ In the instant case there were sufficient "specific and articulable facts" to justify the stop of defendants' car by a reasonable person. The car was observed by the concession stand in the beach area at 5 a.m. This was not merely an unusual place for the defendants to be, their presence was in violation of a Waukegan ordinance. Thus, as the officer testified, defendants' car was "where it should not have been." There had been previous reports of vandalism at concession stands. Finally, there is the officer's comment that the occupants of the car had glanced back at him in a furtive manner as he followed them and that from this he concluded "that something may be up." (In this connection, see Annot., 45 A.L.R.3d 581 (1972).) An officer investigating possible criminal conduct may rely upon his knowledge and experience and the reasonable inferences which may be drawn from the facts which he had observed. *People v. Corrigan* (1977), 45 Ill. App. 3d 502, 359 N.E.2d 1107.

Illinois courts have held investigatory stops to be proper on fewer articulable facts than those present here. See *People v. Tassone* (1968), 41 Ill. 2d 7, 241 N.E.2d 419, and *People v. Connor* (1978), 57 Ill. App. 3d 607, 373 N.E.2d 684.

Defendants rely heavily on *People v. Harr* (1968), 93 Ill. App. 2d 146, 235 N.E.2d 1, and *People v. Schlottman* (1976), 37 Ill. App. 3d 62, 344 N.E.2d 8, but neither case is controlling of the facts before us. In *Harr* an officer observed a car pull out of a gas station closed for the night at 1:30 a.m. The only suspicious thing about the car was that the officer had not noticed it in that vicinity before. Unlike the instant case, there were no reports of any problems with theft or vandalism at the gas station; there was no furtive behavior on the part of the driver of the car; and there was no strong indication that the car was definitely in a place where it should not have been. Five a.m. is a more unusual time for people to be out than 1:30 a.m. A deserted beach may be a more unusual place to park than a closed gas station and Harr's presence in the gas station was not a violation of any municipal parking ordinance.

*Schlottman* is even more distinguishable from the present case. There the police stopped defendant's car while he was driving down a public road merely because he happened to be going in the direction of a rumored party involving illicit drugs.

Defendants also call attention to the cross-examination of Officer Angelos, where defense counsel for defendant Crawford asked:

"You didn't have any reason to believe that these defendants or any one of them had violated any criminal law, did you?"

The answer was "No, sir." We do not find this answer determinative. When viewed in the context of his entire testimony it is clear that the officer was referring to the point in time prior to his observation that there were at least three persons in the car and of their turning to look at him in a furtive manner. It is equally clear that Officer Angelos was interpreting "violated any criminal law" to mean "violated any part of the Illinois Criminal Code" and not "violated any Waukegan ordinance." A major reason Officer Angelos stopped the defendants' vehicle was that they had been parked in a no parking area at five o'clock in the morning with their lights out near a concession stand. This was in violation of a Waukegan ordinance.

Section 107—14 provides in part:

" * * * when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code * * *."

Section 102—15 presently reads:

" 'Offense' means a violation of any penal statute of this State." (Ill. Rev. Stat. 1975, ch. 38, par. 102—15.)

However, at the time of the adoption of section 107—14, in 1968, the definition of "Offense," in section 102—15, read:

" 'Offense' means a violation of any penal statute of this state or of any penal ordinance of its political subdivisions."

Section 102—15 was amended in 1969 by the deletion of reference to penal ordinances of the State's political subdivisions. The question is then poised as to whether this deletion of municipal ordinances from section 102—15 also deletes them from the provisions of section 107—14. The answer is found in *Culver v. People ex rel. Kochersberger* (1896), 161 Ill. 89, 96-97, 43 N.E. 812, 814:

"The general rule is, that an act, which adopts by reference the whole or a portion of another statute, means the law as existing at the time of the adoption, and does not include subsequent additions or modifications of the statute so adopted, unless it does so by express or strongly implied intent."

See also the analysis in *City of Chicago v. Degitis* (1943), 383 Ill. 171, 48 N.E.2d 930, where the supreme court reaffirmed *Culver* and cited the following language of *People ex rel. Cant v. Crossley* (1913), 261 Ill. 78, 85, 103 N.E. 537, 540:

"The effect of such reference is the same as though the statute or the provisions adopted had been incorporated bodily into the adopting statute."

Defendants further contend that Officer Angelos' testimony about the alleged violation of the Waukegan parking ordinance should be disregarded in any consideration of articulable facts leading to his decision to stop the defendants. Defendants claim that the officer was merely guessing about the signs allegedly posted in the parking lot and that the ordinance itself was never introduced into evidence.

■■ With regard to defendants' claim that the officer was merely guessing, an examination of the record convinces us that Officer Angelos was quite certain about the ordinance, that it applied to location of defendants' car and that it was posted. Defendants' statement that the ordinance was not introduced into evidence is quite true, but is also quite irrelevant. Defendants are not charged with the violation of the parking ordinance. If that were the case and the ordinance were not published it would have to be introduced into evidence. Here, however, the existence of the parking ordinance is only relevant in terms of whether Officer Angelos had a reasonable belief that defendants were committing, had committed or were about to commit a criminal offense. In this context the parking ordinance was one fact leading to the conclusion that defendants' car was not where it should be, which, in turn, was a factor in his decision to stop the car. When a traffic or parking ordinance is relevant only in the context of whether a police officer has justifiably stopped a citizen, the ordinance itself need not be placed into evidence unless the officer knew that it had been vacated or declared invalid previous to the stop. There was no such evidence introduced in this case.

In view of the presence of defendants' car in a marked no parking zone at 5 a.m., the prior vandalism at concession stands, the fact that the officer saw defendants' car's lights turn on after he passed, the "furtive" manner of the occupants of the car and the observation of the empty gun holster in plain view in the car, we find that Officer Angelos' actions were proper and that the items in question were obtained in a legal search and should not have been suppressed. The order of the trial court suppressing the evidence is reversed and the cause is remanded.

Reversed and remanded.

NASH and RECHENMACHER, JJ., concur.