(No. 48140.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES JONES, Appellant.

*Opinion filed March 23, 1977.*

Paul Bradley, First Deputy, and Martin Carlson, Assistant Appellate Defender, Office of State Appellate Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B.

Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Joan S. Cherry, and Michael R. Lewis, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, Charles Jones was found guilty of the murder of George Johnson and sentenced to 20 to 40 years' imprisonment. The judgment was affirmed on direct appeal. (*People v. Jones,* 121 Ill. App. 2d 268.) Jones then filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*). He alleged that he was denied due process of law by the failure of the State to disclose to him the contents of grand jury testimony given by a witness, Johnny Dean, who was not called to testify at trial. The petition was dismissed without an evidentiary hearing, and the dismissal was affirmed on appeal, with one justice dissenting (33 Ill. App. 3d 1025). We granted leave to appeal. The sole issue before us is whether the post-conviction petition presented a substantial showing of a denial of due process so as to entitle petitioner to an evidentiary hearing under the Post-Conviction Hearing Act.

Before trial, defendant had filed a motion requesting a list of witnesses and copies of any written or oral statements made by the State's witnesses. The State responded with a list of witnesses which included the name and address of Johnny Dean. As noted above, Dean did not testify at the trial. He did, however, testify before the grand jury. A transcript of the testimony was not given to defendant.

At the trial, deceased's brother, Robert Johnson, testified for the State that Thomas Houston approached Johnny Dean and George Johnson as they emerged from a tavern. Houston held a gun on the two of them and

demanded money that he was owed. George Johnson gave some money to Houston, who then fled with Robert Johnson in pursuit. Robert could not catch him, and upon returning to the vicinity of the tavern he observed George, Johnny Dean, and defendant, Charles Jones, standing near a car in front of the tavern. George Johnson and Jones were engaged in a loud conversation. Robert heard someone say something that sounded like "let's fight," and it looked like George and Jones were going to hit each other. A shot rang out, and George Johnson fell to the ground.

Cleophas Martin, a cab driver, testified for the State. On the night of the occurrence, he was driving his cab. He saw a group of people arguing, and he pulled his cab to the curb and stopped on the opposite side of the street. He heard two men arguing about some money. They were talking loud "so the guys squared off like they was going to fight and when I knew anything I seen the gun, it went off." He saw the gun in the defendant's hand. The deceased was facing Martin, and he did not see anything in the deceased's hand. Martin immediately left and summoned the police.

Charles Jones testified on his own behalf that he was drinking at the same tavern. As he left the tavern he was struck by Johnny Dean, who shouted to the Johnson brothers that Jones was Houston's cousin. He attempted to go to his car, but George Johnson hit him and pulled out a gun. It was at this point that he shot George Johnson.

Although Dean did not testify, he was present in the courtroom during the trial. He had testified before the grand jury that when he left the tavern Tommy Houston robbed him and George Johnson at gunpoint and then fled. Houston's cousin, Charles Jones, then drove up. Dean yelled to George Johnson that Houston was Jones' cousin and that perhaps Jones could lead them to Houston. George Johnson walked over to Jones' car, "and one word led to another and they got to fighting." Dean also

testified: "I don't know who got the first lick. They started fighting \*\*\* and Charles Jones shot George."

The petition alleges that petitioner was denied due process by the State's failure to disclose Dean's grand jury statements, in response to a defense motion for a list of witnesses and any statements made by the State's witnesses. It alleges further that this testimony would have been favorable and material to the petitioner in that it would have corroborated his testimony that he shot George Johnson only after Johnson had struck him, and would have rebutted the testimony of Robert Johnson that no fight had begun prior to the shooting.

An evidentiary hearing under the Post-Conviction Hearing Act should be granted only if the petition makes a substantial showing of a constitutional violation, and conclusional allegations are not sufficient to require an evidentiary hearing. (*People v. Arbuckle,* 42 Ill. 2d 177; *People v. Evans,* 37 Ill. 2d 27.) A court may also properly dismiss a post-conviction petition if the record of proceedings at trial shows the petition to be nonmeritorious. *People v. Owens,* 54 Ill. 2d 286; *People v. Spicer,* 47 Ill. 2d 114; *People v. Arbuckle,* 42 Ill. 2d 177.

Since the defendant's trial was held in August 1968, we are not here concerned with his right to secure the grand jury testimony of Dean through discovery under our Rule 412(a)(iii) (58 Ill. 2d R. 412(a)(iii)), which became effective October 1, 1971. That question was considered by this court in *People v. Lentz,* 55 Ill. 2d 517. Also we are not here concerned with the effect of section 112–7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 112–7), which requires that all grand jury testimony be transcribed. That section of the statute became effective October 1, 1975. We are concerned only with whether the production of Dean's grand jury testimony was constitutionally required. Since the defendant's post-conviction petition was dismissed without a hearing, we must decide whether the petition and supporting

affidavit, when read in light of the record of proceedings, make a substantial showing that the defendant was denied due process of law by the failure of the State to furnish him a transcript of Dean's grand jury testimony.

The petitioner relies on *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, which held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to the guilt or punishment, irrespective of the good faith or bad faith of the prosecution. The history of the development of this principle prior to *Brady,* and the refinement and application of the *Brady* rule subsequent to that decision, have been extensively discussed in a comment in 40 U. Chi. L. Rev. 112 (1972). The author there acknowledges the uncertainty of the application of the various aspects of the *Brady* rule as demonstrated by the decisions of various lower courts which have attempted to apply it.

However, on June 24, 1976 (subsequent to the filing of the appellate court opinion in this case), the Supreme Court of the United States filed its opinion in *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, which resolves the uncertainty of elements of the *Brady* rule important to the decision of this case.

The defendant did not specifically request that Dean's grand jury testimony be furnished, although Dean was named as a possible State witness and his name was endorsed on the indictment returned by the grand jury as a witness. The defendant did move and the court ordered that defendant be furnished with a list of witnesses and copies of any written or oral statements. Our case presents a two-pronged threshold question. Was a specific demand for Dean's testimony necessary to invoke the *Brady* rule and, if so, did the defendant's motion that he be furnished with a list of witnesses and copies of any written and oral statements satisfy the demand requirement?

In *Agurs* the court concluded that a general request

such as the defendant made in this case "really gives the prosecutor no better notice than if no request is made." (427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) The defendant's demand did not therefore satisfy the demand requirement. Although the court concluded that the prosecutor may not be relieved of the obligation to produce exculpatory material when no request is made, it held that "[t]he test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2398.

A request by the defendant for specific material serves the important function of "flagging the importance of the evidence for the defense and thus imposes on the prosecutor a duty to make a careful check of his files." (*United States v. Keogh* (2d Cir. 1968), 391 F.2d 138, 147.) Such a "flagging" function is of considerable importance in a busy State's Attorney's office such as that of Cook County, where thousands of indictments are returned annually with different assistants performing different functions. It would be virtually impossible for an assistant who primarily handles grand jury indictments to recall all of the evidence that has been given by grand jury witnesses and communicate it to the assistant prosecuting the case. Even if the grand jury testimony is transcribed and in the prosecuting assistant's file, its probative value may not be so obvious as to make its importance to the defense readily apparent.

Of course, if the defendant is not aware of the existence of exculpatory evidence and therefore does not specifically request its production, the prosecutor is not thereby relieved of his constitutional obligation to furnish it to the defendant. If the prosecutor has in his file evidence "highly probative of innocence" (427 U.S. 97, 110, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400) *Agurs* holds that the prosecutor should be presumed to

recognize its significance even if he actually overlooks it. There are situations "in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." 427 U.S. 97, 110, 49 L. Ed. 2d 342, 354, 96 S. Ct. 2392, 2401.

Absent a specific request, however, the prosecutor is not required to furnish defendant with everything in his file that might influence the jury. The prosecutor "will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." 427 U.S. 97, 108, 49 L. Ed. 2d 342, 352, 96 S. Ct. 2392, 2399.

*Agurs* further holds that the burden on the defendant is not the heavy one of demonstrating that the withheld evidence probably would have resulted in an acquittal. The court also rejected the argument for the more lenient burden that the focus should be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial and stated:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." (Footnotes omitted.) 427 U.S. 97, 112, 49 L. Ed.

2d 342, 354-55, 96 S. Ct. 2392, 2401-02.

The defendant argued to the trial court that Dean's grand jury testimony contradicts the testimony of the State's witnesses and supports the defendant's testimony that there was a fight between the defendant and the deceased; that the deceased was the aggressor and that defendant shot the deceased only after the deceased had hit him. Evaluating the omitted testimony of Dean in the context of the entire record as required by *Agurs* (see also 40 U. Chi. L. Rev. 112, 125) we cannot say that the omitted evidence creates a reasonable doubt that did not otherwise exist.

In fact, Dean's testimony substantially corroborates the testimony of the State given by the cab driver, Martin, and Robert Johnson, and in several respects contradicts the testimony given by the defendant. Dean's testimony does not support the defendant's contention that the deceased struck the first blow or pulled a gun on the defendant or was the aggressor. Nor does it show that the deceased, in fact, ever struck the defendant. It shows only that the defendant and the deceased "got to arguing and they got to fighting" and "I don't know who got the first lick. They started fighting." This is substantially the same version as recounted by the cab driver and by Robert Johnson. The testimony of both of these State's witnesses is referred to earlier in this opinion.

As noted above, we are not concerned with whether Dean's testimony *might* have affected the jury's verdict. We are concerned only with whether Dean's testimony "evaluated in the context of the entire record" creates a reasonable doubt of the defendant's guilt that did not otherwise exist. The transcript of the testimony given at the defendant's trial was filed in the post-conviction proceeding. We have thus been able to evaluate Dean's grand jury testimony, which was attached to the post-conviction petition, in the context of this other testimony and find that Dean's testimony does not create a reason-

able doubt of defendant's guilt that did not otherwise exist. Thus, the post-conviction petition does not make a substantial showing of a constitutional violation and the trial court did not err in dismissing the petition. We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*