THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN BERRY, Defendant-Appellant.

First District (1st Division)   No. 76-1552

Opinion filed October 31, 1977.

James L. Oakey, Jr., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Myra J. Brown, and William G. Pileggi, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Stephen Berry (defendant), was found guilty of unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)), and was sentenced to one to three years (par. 24—1(b)). On his appeal to this court he depends upon two issues: denial of his motion to suppress physical evidence and alleged violation of his due process rights because substantive evidence favorable to his defense was not produced by the State.

Police officer Eugene Bartkiewicz, called by defendant, was the only witness on the motion to suppress. He testified that on May 30, 1976, about 5:20 a.m., while on routine patrol with another officer, he received a city-wide radio broadcast directed to all police units advising that a male Negro with a gun was on the street at 540 North Lamon, in Chicago. The officers reached the scene in one minute. The witness left his car, with gun drawn pointing toward the ground. He saw defendant, a male black person, but saw no one else. The witness said to defendant, "Come here for a minute." As defendant approached, he removed his blue nylon jacket and let it fall to the ground. It fell, "very heavy, fast." A protective frisk of defendant's person disclosed no weapon. The witness saw the jacket some 4 feet away. He walked approximately two steps, lifted the jacket and found a loaded .25-caliber automatic pistol in the pocket. He then placed defendant under arrest and advised him of his legal rights. The trial court then denied the motion to suppress.

■■ In view of the fact that testimony received at trial is properly considered by this court in passing upon the ruling of the trial court on the motion to suppress (see *People v. Smith* (1977), 51 Ill. App. 3d 87, 91, 366 N.E.2d 426 and authorities there cited), we will next state the pertinent evidence on this issue heard by the court at trial. The parties stipulated that the testimony of the police officer on the motion to suppress should be considered on the case in chief. Defendant testified that his brother lived at the Lamon address. As he was proceeding to visit his brother, he met two men who identified themselves to him only as "Duck and Spider." He spent some 30 minutes drinking from a bottle with them. They suddenly ran away. He turned and saw the police. He was not wearing a jacket and owned no such article of clothing. He walked toward the car at the officer's request. When he reached the officer, the jacket was at least 8 feet away. The officer walked over to the jacket and, "He pulled the gun like this (indicating), you know." On cross-examination when asked if he saw the police pull a gun out of the jacket he responded, "No, I really don't know." Defendant denied categorically that the gun was his and denied that he had ever had possession of the gun or the bullets.

■■ On the motion to suppress physical evidence, the burden of proving that the search and seizure were unlawful is on the defendant. (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(b); *People v. Wright* (1969), 42 Ill. 2d 457, 460, 248 N.E.2d 78.) It is our duty to affirm the result reached by the trial court unless the ruling of that court was "manifestly erroneous." (*People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506, and authorities there cited.) The first determination to be made here is a matter of law as to whether defendant was arrested or was merely

accosted under the stop and frisk theory. There is a legal distinction between arrest and stop and frisk.

■■ In a situation of this type, as regards a stop and frisk, a police officer is required to "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant * * *" the stop of the citizen. (*People v. Lee* (1971), 48 Ill. 2d 272, 276, 269 N.E.2d 488, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868. See also *People v. Sanford* (1976), 34 Ill. App. 3d 990, 995, 341 N.E.2d 453, *appeal denied* (1976), 63 Ill. 2d 554.) The principles in *Terry* have been codified by our legislature. Ill. Rev. Stat. 1975, ch. 38, pars. 107—14, 108—1.01.

■■■ In the case before us the officers had not only the right but the duty to accost defendant and subject him to a protective frisk. This was justified and required by the substance of the radio broadcast, the time the incident occurred and the location and designation of the defendant. Regarding the actual finding of the pistol, there is a factual issue as to whether the jacket was dropped by defendant and whether it was in such close proximity to the officer as to create a danger under all of the circumstances here shown. On these factual issues we cannot say that the result reached by the trial court was "manifestly erroneous." On the contrary, the record shows greater credibility of the testimony for the prosecution over that of the defendant. The legality of the search is strongly supported by the evidence.

■■ We will add that, in our opinion, the defendant was not under arrest until after the weapon had been found. There was no restraint of defendant by the officer with intent to accomplish an arrest. Neither the physical attributes nor the necessary intent are present to classify the incident as an arrest. (See *People v. Housby* (1975), 26 Ill. App. 3d 92, 95-96, 324 N.E.2d 465, *appeal denied* (1975), 60 Ill. 2d 599; *People v. Ussery* (1974), 24 Ill. App. 3d 864, 867-68, 321 N.E.2d 718, *appeal denied* (1975), 58 Ill. 2d 598; *People v. Howlett* (1971), 1 Ill. App. 3d 906, 909-10, 274 N.E.2d 885, *appeal denied* (1972), 49 Ill. 2d 576.) We conclude that the motion to suppress was properly denied.

As regards the alleged denial of a fair trial by suppression of evidence, defendant, and therefore presumably his counsel, had full knowledge of the existence of the jacket from which the police recovered the gun. On August 11, 1976, defendant, by his counsel, filed a lengthy motion for discovery. The motion requested a list of all physical property that the State intended to use at the time of trial. The jacket was not mentioned. So far as the record before us shows, the jacket was first specifically referred to by counsel for defendant on August 26, 1976, before proceeding with the motion to suppress. On that day, the State filed a written answer to defendant's motion for discovery which listed as

physical evidence only the pistol, a bullet clip and ammunition. Counsel for defendant told the court that in two previous court appearances he had requested production of the jacket allegedly belonging to defendant. The court recalled this request from the preceding hearing. Defendant's counsel stated that he was informed by the State that morning that the jacket was never inventoried and had been returned to defendant. The assistant State's Attorney told the court, and defense counsel agreed, that the State had previously called the office of defense counsel and advised him of these facts regarding possession of the jacket.

The evidence shows that on the motion to suppress, the police officer testified that the jacket was returned to defendant by him or his partner at the scene or in the police station. At trial the officer testified that the jacket had never been inventoried. Defendant testified at trial that the jacket was not his and that he never had possession of it. He testified that the jacket was never given to him. When asked by his own counsel whose jacket it was, defendant responded, "Spider and them other guys." Defendant also testified that he last saw the jacket in the police station.

■■ Defendant urges that failure of the police to produce the jacket was a violation of due process. (*Brady v. Maryland* (1963), 373 U.S. 83, 86-87, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) Defendant also cites and depends upon *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40. In *Nichols*, a divided supreme court held that a discarded shoe found at the scene of a murder should have been produced by the State. The People did not claim inability to produce the item and they failed to produce it in open court, although apparently it was in their possession.

In *People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104, the issue revolved about a transcript of testimony of a witness given before the grand jury. The witness was not called to testify at trial. The State did not disclose the existence of the grand jury testimony. The supreme court held that due process rights of the defendant were not violated. In our opinion, *Jones* is decisive of the case before us in this regard for two reasons.

First. In *Jones*, there was never a specific request by defendant for the transcript of testimony even though the name of the witness was endorsed on the indictment and was given to defendant on the State's list of witnesses. The Supreme Court of Illinois, depending upon *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, held that a general request does not satisfy the requirement that a demand for the allegedly exculpatory material should be made by defendant. In the case before us, as shown, defendant was fully aware of the existence of the jacket and no request was made for its production in his motion for discovery. We cannot say that the jacket was "obviously of such substantial value to the defense that elementary fairness requires it to be

disclosed even without a specific request." *Jones*, 66 Ill. 2d 152, 160, quoting *Agurs*, 427 U.S. 97, 110, 49 L. Ed. 2d 342, 96 S. Ct. 2392.

There is strong evidence before us that the jacket was returned to defendant. Also the item was never inventoried by the police as were the gun and ammunition. It is therefore reasonable to conclude that the State did not have possession of the jacket. In such a situation, "where neither the prosecution nor its agents are in possession of such evidence, the prosecution may hardly be accused of suppressing it." *People v. Gaitor* (1977), 49 Ill. App. 3d 449, 454, 364 N.E.2d 484, and authorities there cited.

Second. As pointed out in *Jones*, the test of a deprivation of constitutional rights in a situation of this type is not whether the omitted evidence might possibly have affected the jury's verdict. As the supreme court pointed out, the issue is whether the unproduced item " 'evaluated in the context of the entire record' creates a reasonable doubt of the defendant's guilt that did not otherwise exist." (66 Ill. 2d 152, 161.) It is true that in *Jones* the supreme court had before it for evaluation the transcript of the testimony in question. However, the trial court and this court, in the case at bar, have evidence regarding the appearance of the jacket and its possible disposition. In our opinion, the result reached by the trial court that the jacket was removed and dropped by defendant is supported by the evidence beyond any reasonable doubt. Consequently, any attempt to evaluate the effect of production of the jacket, is necessarily pure speculation. This situation does not comply with the legal requirement that the evidence in question creates a reasonable doubt of guilt that did not otherwise exist. We conclude that no due process rights were violated and that the judgment appealed from should be affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.