THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS EARL ABNER, Defendant-Appellant.

Third District   No. 82—182

Opinion filed March 22, 1983.

STOUDER, J., specially concurring.

Thomas E. McClure, of Elliott & McClure, of Momence, and Robert Agostinelli and Gary Hicks, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Dennis Abner, was charged in the circuit court of Peoria County with attempted armed robbery. Following a jury trial, he was found guilty as charged and sentenced to eight years' imprisonment.

On appeal, the defendant contends that: (1) the court erred in denying the defendant's motion for additional discovery; (2) the court erred in denying the defense motion to suppress identification; and (3) the State failed to prove him guilty beyond a reasonable doubt.

The defendant was charged with the attempted armed robbery of the Lincoln Branch Peoria Public Library. On September 25, 1981, a black male, wearing sunglasses and holding a gun, handed a note to Jeanne Stokes, a library employee, telling her to hand over money or he would shoot her. The man left after Mrs. Stokes threw the note back at him and told him to leave. Mary Genzel was also working that day. She had assisted the man in locating some books and observed him as he left the library after the attempted robbery. Later, at the police station, the women were shown some photographs. Ms. Genzel selected two photos of different men for the purpose of demonstrating particular features similar to the armed robber. The State was not aware of this fact prior to trial, and there was no police record of the incident. Meanwhile, relying on a description given by Mrs. Stokes and Ms. Genzel, the police had apprehended the defendant. Ms. Genzel and Mrs. Stokes separately viewed a lineup. Ms. Genzel positively identified the defendant as the armed robber. Mrs. Stokes also picked out the defendant but she was not positive. Both women again identified the defendant at trial.

The defendant now asks us to reverse the trial court because he did not know prior to the trial that Ms. Genzel and Mrs. Stokes had viewed mug shots before the lineup was conducted. The defendant maintains that the court should have granted his motion for additional discovery on this matter since the State was required to disclose that information prior to trial pursuant to Supreme Court Rule 412 (73 Ill. 2d R. 412). In order to determine if the trial court abused its discre-

tion in denying the defendant's motion, we must first ascertain whether the State was indeed required to divulge the information.

■ Supreme Court Rule 412 requires the State to disclose information to the accused under certain circumstances. Rule 412(a) requires the State to disclose information within its possession and control upon written motion of defense counsel. This paragraph goes on to list the types of information discoverable. Although the defendant filed a written motion pursuant to Rule 412, he made no specific request for information concerning the lineup. Therefore, disclosure was not required by Rule 412(a).

■ Rule 412(c) requires the State to disclose any information in its possession or control which tends to negate the guilt of the accused. Although section (c) does not explicitly require a written request for such information, the Illinois Supreme Court has held that absent a specific request, the prosecutor is not required to furnish the defendant with everything in his file that might influence the jury. However, information favorable to the accused may be so significant that the State's duty to disclose is not dependent upon the defendant's request. The standard to be applied is the materiality of the information, which depends on a review of the record. If the omitted information would create a reasonable doubt of the defendant's guilt which did not otherwise exist, then a new trial is justified. (*People v. Jones* (1977), 66 Ill. 2d 152, 160.) After reviewing the record, we cannot conclude that the prior viewing of mug shots by the two librarians created a reasonable doubt as to the defendant's guilt.

■ Ms. Genzel did not identify the defendant in any of the photographs and only selected two photographs of different men for the sole purpose of showing features which were similar to the defendant's. In all respects, Ms. Genzel's identification was positive and unwavering. Although Mrs. Stokes' identification was not as positive, in view of the other evidence which is discussed later in this opinion, the fact that the witnesses viewed some mug shots before identifying the defendant in a lineup does not raise a reasonable doubt as to the defendant's guilt.

In addition, upon learning that the witnesses had viewed mug shots, the State's Attorney's office checked the police file. There was no report of any photographic viewing by the witnesses, and the officer in charge of the investigation could not remember any such viewing or who might have shown the photographs to the witnesses. Despite the fact that the State's Attorney's office had no knowledge of the photograph viewing session, the defendant argues that the State should have known this fact. This argument is irrelevant. Our pre-

vious discussion has indicated that even if the State had such knowledge, disclosure was not required unless the defendant specifically requested the information, or the information would have raised a reasonable doubt as to the defendant's guilt. The testimony of the librarians was sufficient to demonstrate that no reasonable doubt could be raised simply because they had viewed some mug shots and since there was no record of the viewing, additional discovery would have been counterproductive.

Next, the defendant argues that the lineup identification should have been suppressed because it was impermissibly suggestive. At the suppression hearing, the burden was on the defendant to show that under the totality of the circumstances, the lineup was conducted in an impermissibly suggestive manner and raised a substantial likelihood of irreparable mistaken identification. (*People v. Anton* (1981), 100 Ill. App. 3d 344.) The defendant contends that he confronted two white females while being led to the lineup room. The implication is that the two women were Mrs. Stokes and Ms. Genzel. However, this is pure conjecture on the part of the defendant. It is equally possible that the two women the defendant saw were civilian secretaries who were on duty that night. Since it is not clear who the two women were, the incident cannot support a finding of impermissible suggestiveness at the lineup.

The defendant also argues that other members of the lineup were so dissimilar in appearance to himself as to make the lineup procedure unduly suggestive. The librarians had described the offender as tall, thin and light-complected with reddish brown hair. The defendant states that he was the only person in the lineup who matched that description.

After reviewing a photograph of the lineup as it appeared to Mrs. Stokes and Ms. Genzel, we find that the two other members of the lineup were approximately the same height as the defendant and any disparity in weight is not readily apparent. Although the defendant was the lightest complected person in the lineup, the difference in complexion shading between the five persons in the lineup was a matter of degree and not prejudicially suggestive.

The defendant also argues that the lineup was unduly suggestive because he was the only person wearing a ring. In the absence of any evidence showing that the defendant was required by the police to wear the ring, there can be no claim of impermissible suggestiveness as to require suppression of the identification. (*People v. Madden* (1977), 52 Ill. App. 3d 951, 956.) In the present case, the record clearly established that it was routine police procedure to require the

members of a lineup to remove their jewelry if possible. The defendant testified that he was unable to remove the ring. A ring on a finger would be a distinguishing feature of *de minimus* proportions. Thus we reject his contention that the lineup for such reason was unnecessarily suggestive.

The defendant's final argument is that the State failed to prove him guilty beyond a reasonable doubt. The defendant bases this argument on three grounds. First, the lineup identification should have been suppressed. For reasons already stated, we have concluded that this evidence was properly admitted.

■ Second, there was no independent basis for the in-court identification of the defendant. Before the State is required to demonstrate an independent basis for an in-court identification, it must first be established that the out-of-court identification was improper. Since we have concluded that the lineup was properly conducted, there is no need to discuss this issue.

■ Third, the defendant was never linked to the physical evidence used during the attempted armed robbery. Although it is true that the police never found the note, gun or sunglasses which the defendant used during the attempted armed robbery, there was still sufficient evidence to sustain a guilty verdict.

The defendant was identified by two eyewitnesses who had ample time to observe him under good viewing conditions. Approximately three blocks from the library, the police saw a man who matched the description given them by the librarians. As the police approached him, he ran away. The police pursued him to the back door of a private residence. A woman who identified herself as Yvonne Abner, admitted the officers through the front door. They found the defendant in the basement of the residence, wearing different clothes from those he had on during the chase. The original clothing was found on a ledge near where the defendant was standing. In light of this evidence, we find that the jury's verdict was not so unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

Affirmed.

SCOTT, J., concurs.

JUSTICE STOUDER, specially concurring:

While I agree with the result reached by the majority of the court and with most of the reasoning, there are aspects of the opinion which cause me concern. This area of concern relates to the motion

for additional discovery made during trial when defense counsel learned for the first time the two occurrence witnesses for the prosecution had been shown mug shots or photographs by police officers before later making an identification of the defendant at a lineup.

The first observation of the majority with which I disagree is the assertion that Officer Hoffman's knowledge or that of any other police officer and their participation in the photographic exhibition cannot be considered knowledge of the prosecution because there was nothing in the file of the State's Attorney regarding the event and apparently, according to the majority, the prosecutor's office is not charged with knowledge and information possessed by the investigative staff of police officers. This is not the rule contemplated by Supreme Court Rule 412(f) (73 Ill. 2d R. 412(f)), and indeed if the purposes and goals of pretrial discovery could be so easily defeated by merely having investigating officers fail to communicate information or reports to the State's Attorney's office, discovery procedures would be of little benefit. (See *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208.) However, in the case at bar, although it appears the occurrence witnesses made two trips to the police station and the viewing of photographs took place on the first visit, there is no evidence that any report was made of this visit, there was therefore no possibility of furnishing any additional discovery at the time it was requested. However, the exhibition of photographs is a subject which should have been encompassed in a report as is demonstrated by the police report incident to the second visit which declares that no photographs were exhibited because the defendant was already in custody. The testimony of the two occurrence witnesses concerning the viewing of photographs is unequivocal, and the police officer's failure to make an appropriate memorandum of the viewing ought not be approved.

I think the reports and statements of the witnesses would have been discoverable under Supreme Court Rule 412(a)(i) (73 Ill. 2d R. 412(a)(i)) without any specific reference to a lineup or a showup contrary to the assertion in the majority opinion, but I am inclined to agree that no reversible error occurred because the record fails to disclose that there were items discoverable under Supreme Court Rule 412(a)(i) which were in fact in existence and not provided to defendant.

Defendant in his brief asserts that he was entitled to the additional discovery not under Supreme Court Rule 412(a)(i) but under Supreme Court Rule 412(c). This rule is somewhat like the rule in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194,

declaring that suppression by the prosecution of evidence favorable to the defendant fails to accord the defendant his constitutional due process. *People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104, the principal case cited by the majority, relying on *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, considers the failure to disclose exculpatory evidence in terms of constitutional due process requirements and announces the test which is described in the majority opinion. Several caveats are in order before the test can or should be accepted and applied in the broad terms suggested. First, in *Agurs* the court is not concerned with pretrial discovery procedures established by rule or statute and in fact disclaims any intent that its test be applied to those cases where the prosecution has failed or refused to comply with specific discovery rules. Second, where exculpatory material is specifically described and its production is refused *Agurs* would require a different rule than one in which in effect no request for discovery is made or it is made in such general terms that it is the equivalent of no request. Third, the test finally envisions a showing of a lesser effect on the fact-finding process than that required for relief based on newly discovered evidence, even though the language of the test may be regarded as somewhat ambiguous in this respect. And fourth, the statement in *Jones* which the defendant claimed should have been produced was not even exculpatory.

I have made the foregoing observations because I believe the broad generalizations either in this opinion or in those relied upon may be confusing when considered apart from the factual context in which they are made. I would affirm the defendant's conviction based on the observation that under the facts of this case the record reveals no evidence which could be subject to the defendant's motion for additional discovery at the time it was made.