THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MANTRELL JOHNSON, Defendant-Appellant.

First District (2nd Division)   Nos. 1—99—1132, 1—99—1665 cons.

Opinion filed June 20, 2000.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Linda Halperin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

This is a consolidated direct appeal and postconviction appeal. The

State charged defendant, Mantrell Johnson, with the aggravated vehicular hijacking and armed robbery of Jose Valadez. Following a jury trial, the trier of fact found defendant guilty of aggravated vehicular hijacking (720 ILCS 5/18—4(a)(3) (West 1996)) and armed robbery (720 ILCS 5/18—2 (West 1996)). For sentencing purposes, the trial court merged defendant's armed robbery conviction with his aggravated vehicular hijacking conviction and sentenced him to 10 years' imprisonment in the Illinois Department of Corrections. On appeal, defendant contends that: (1) his conviction for armed robbery based on the taking of the automobile title must be reversed because no force was threatened or used; (2) his 10-year sentence for aggravated vehicular hijacking was excessive; and (3) his postconviction counsel failed to adequately represent him and, thus, the resulting dismissal of his petition must be reversed and remanded for further proceedings.

For the following reasons, we reverse defendant's armed robbery conviction, remand for resentencing his aggravated vehicular hijacking sentence, and affirm the dismissal of his postconviction petition.

## BACKGROUND

The complaining witness, Jose Valadez, testified that he owned a black, four-door Chevy Caprice in which he placed a "For Sale" sign. On November 23, 1996, defendant went to Valadez's house, inquired about the car, and took it on a test drive while Valadez sat on the passenger's side. After they returned from the test drive, the two men negotiated and agreed upon a price for the car. Defendant told Valadez that he would return with the money and Valadez went back into his home.

Approximately two hours later, defendant returned to Valadez's home with a friend who was later identified as Antwan. Defendant told Valadez that Antwan was a mechanic who wanted to take the car on another test drive. Antwan drove as Valadez sat on the front passenger's side. Defendant was sitting behind Valadez. During the drive, defendant asked Valadez if he could see the car's title. Valadez handed the title to defendant. Valadez had already signed the title but did not date it because he was not sure that defendant was going to make the purchase.

Valadez further testified that defendant told him that he did not have the full purchase amount and that he would have to go to a relative's home. Antwan drove to a house. Defendant alighted from the vehicle and later returned holding a paper bag. Defendant was also accompanied by another man. Defendant and the individual got into the car and Antwan continued to drive. Defendant still had Valadez's title but had not given Valadez any money.

Valadez told defendant that they needed to close the deal because he had company waiting for him at his home and that he wanted to return. Antwan continued to drive in the opposite direction and stopped alongside some railroad tracks. Defendant exited the car, walked over to where Valadez was seated, asked Valadez for his wallet, ordered him to get out of the car, and told Valadez to walk away as he pointed a black revolver at Valadez's head. Valadez got out of the car and started to walk away. Defendant got back into the car and Antwan drove away. Valadez walked home, picked up an emissions control document for his car, went to the police station, and filed a report.

Officer Palukaitis testified that on January 24, 1997, he and his partner drove to the 7700 block of South Saint Louis Street after receiving information that a stolen vehicle could be located there. The description given was that of a black Chevy with an orange vehicle registration sticker affixed to the rear window.

When the two officers arrived at the location, they saw the subject automobile. Palukaitis exited his vehicle, retrieved the vehicle identification number from the black Chevy, and transmitted the information to a dispatch center. The officers then drove around while they waited for information about the car. When they finally learned that the car had been taken in an armed robbery on November 26, 1996, they went back to the area but the car was gone.

The next day, January 25, 1997, Palukaitis, his partner, and two other officers surveilled the area. Twenty minutes later, Palukaitis observed the subject vehicle as someone inside of it parked it at approximately 7733 South Saint Louis Street. The person who had driven the car, later identified as defendant, exited the car and entered a building located at 7731 South Saint Louis Street. Palukaitis and his partner drove to the house, exited their vehicle, and knocked on the door.

Defendant's stepfather permitted the officers to enter his home after Palukaitis explained the purpose of his visit. Defendant told Palukaitis that the car could not have been stolen because he had the title to the car. Palukaitis knew that the title had been taken in an armed robbery, so he retrieved the title, asked defendant to step out of the house, and transported him to the police station where Valadez identified him as the person who had robbed him.

Assistant State's Attorney Keri Mason (ASA Mason) testified that on January 25, 1997, she interviewed defendant after giving him his *Miranda* rights. A youth officer and a detective were also present. Defendant told ASA Mason that he took the title to a man's car, robbed a male individual at gunpoint, and then stole his car. ASA Mason wrote down defendant's statement, which defendant later signed. When she

showed him a copy of the victim's driver's license, defendant recognized Valadez as the person whom he had robbed.

ASA Mason published defendant's statement to the jury: Defendant stated that, on November 23, 1996, he went to Jose Valadez's house to talk about the "For Sale" sign that he had seen in Valadez's 1985 Caprice. Valadez allowed defendant to test drive the car while Valadez was in the car. After the test drive, defendant drove them back to Valadez's house, parked the car, and told Valadez that he would return in a few days with the agreed-upon $900 price. Defendant went home, called his friend named Antwan, and told him about the car. Defendant spoke to Antwan about stealing the car. He and Antwan talked about how they could get a gun and pull it out on Valadez when they got out of the car. Defendant and Antwan met at 6:30 p.m. on November 23, 1996. Antwan got the gun and the two went to Valadez's house. They asked Valadez if they could test drive the car. The three men got in the car. Antwan drove because he told Valadez that he wanted to buy the car also. Valadez was sitting in the front passenger's side and defendant was sitting behind Valadez. As they were driving, defendant asked Valadez to give him the title so that he could peruse it. Valadez gave the title to him. Defendant kept it and signed his name in the "assignment of title" section to show that it was legally his although he knew that it was not. Defendant never had money to buy Valadez's car and Valadez did not give him consent to take the car and keep it. Defendant stole the car because he liked it. Antwan stopped the car around 63rd and Bell Street. Valadez asked why they were stopping and defendant told him because he needed to get more money. Defendant opened the door to where Valadez was sitting and told him to get out of the car as he pulled a gun out and held it by his side. Valadez looked at the gun, got a scared look on his face, and quickly walked away. Antwan sped away after defendant got back into the car. They went to Valadez's house to pick up the car in which they drove to Valadez's house. Antwan drove Valadez's car to defendant's house and defendant took Antwan home after he gave the gun to Antwan.

At the close of the State's case, the defense moved for a directed verdict, which the trial court denied.

Defendant testified that on November 26, 1996, he owned and operated a black Caprice that he had acquired from an acquaintance named Antwan. He had seen Antwan driving the car, which had a "For Sale" sign in it, flagged him down, and asked him the price. Antwan told defendant that the price was $600 of which defendant paid him $300. He had agreed to pay the balance at a later date but never did. Antwan gave defendant the title to the car and told him to sign it.

Defendant did not notice whether someone else's name was on the title. An orange sticker was affixed to the window of the car when defendant purchased the car from Antwan. Defendant test drove the car with Antwan. He never test drove the car with Valadez, went by Valadez's house, or saw Valadez before Valadez testified. Defendant had installed a compact disc player, amplifiers, kicker box, two mufflers, new tires, and hub caps on the car.

Defendant further testified that on January 25, 1997, the police went to his home. He voluntarily left with them because he felt that he was the proper owner of the car. The police handcuffed him outside and took him to the police station.

Once he arrived at the police station, the police took defendant to a room and told him that he was "going down" for car jacking. Defendant told the officers that he had purchased the car from Antwan. An officer told him that if he did not confess, he would not be able to go home and also that he would get a 30-year sentence. The officer also told him that if he confessed he could go home that night.

According to defendant, the officer continued to badger him and defendant finally confessed. The police then provided defendant with the details of the crime. The police told him to tell the assistant State's Attorney that he and Antwan drove the car to Valadez's home together, that he got rid of the gun by giving it back to Antwan and that, after he returned to his house, he drove Antwan home in the stolen car. The police also told him to say that, when he had a conversation the second time with Valadez, Antwan was the one who wanted to buy the car. According to defendant, the police made those things up.

Defendant also testified that the statement was a little different from what he and the officers had discussed. For example, he did not tell the assistant State's Attorney that a third man got into the car because he forgot even though the arresting officers told him what to say. Defendant also did not tell the assistant State's Attorney that he asked Valadez for his wallet because he forgot even though the police told him what to say.

Further, defendant stated that he signed the untrue portions of the statement because he was not paying attention to what the assistant State's Attorney was reading. Defendant was trying to get out of there because the police told him that if he confessed he would go home that night.

On rebuttal, Officer Timothy Koran testified that he was involved in defendant's arrest on January 25, 1997. He did not tell defendant that if he did not confess he would not go home or that he would get 30 years. He also did not tell defendant that he should admit to the crime or what to say to the assistant State's Attorney. Koran also

stated that no one in his presence told defendant to do those things either. Further, Koran did not spend two hours going over facts with defendant so that defendant could memorize them.

At the close of evidence, the jury found defendant guilty of aggravated vehicular hijacking (720 ILCS 5/18—4(a)(3) (West 1996)) and armed robbery (720 ILCS 5/18—2 (West 1996)). Defendant, thereafter, filed a motion for a new trial, which the trial court denied. Defendant's sentencing hearing followed.

The trial court stated that, for sentencing purposes, it was merging defendant's armed robbery charge into his aggravated vehicular hijacking charge and sentenced defendant to 10 years' imprisonment in the Illinois Department of Corrections. Defendant's private postconviction counsel then filed a petition for postconviction relief, which the trial court summarily dismissed as being frivolous and patently without merit. Defendant appeals from the convictions, sentence, and the summary dismissal of the postconviction petition in the trial court.

OPINION

I

█ Defendant contends that his conviction for armed robbery based on the taking of the title must be reversed since he did not use force or threat of force in obtaining the title from Valadez. We agree and reverse defendant's armed robbery conviction.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Nitz*, 143 Ill. 2d 82, 95, 572 N.E.2d 895, 900 (1991); *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

A person commits armed robbery when he or she takes property from the person or presence of another by use of force or by threatening the imminent use of force while armed with a dangerous weapon. 720 ILCS 5/18—1, 18—2(a) (West 1996); *People v. Dennis*, 181 Ill. 2d 87, 101, 692 N.E.2d 325, 333 (1998).

Here, the indictment charged that defendant "by the use of force or by threatening the imminent use of force while armed with a dangerous weapon, to wit: a gun took the car title from the person or presence of Jose Valadez, in violation of Chapter 720, Act 5, Section 18—2 of the Illinois Compiled Statutes."

However, the evidence shows that defendant asked Valadez if he could see the title to Valadez's car and that Valadez gave it to him. There was no evidence of any force. In fact, after Valadez gave the title to defendant, defendant exited the vehicle, entered a house (allegedly belonging to a relative), and then returned to the car. The fact that defendant left the car after receiving the title separates the acquisition of the title from defendant's subsequent conduct that formed the basis of his aggravated vehicular hijacking charge.

In an effort to link defendant's acquisition of the title to his conduct relative to his aggravated vehicular hijacking charge, the State cites *People v. Lewis*, 165 Ill. 2d 305, 651 N.E.2d 72 (1995), and *People v. Hampton*, 149 Ill. 2d 71, 594 N.E.2d 291 (1992), as the controlling law in this case.

The State cites *Lewis* for the proposition that, as long as there is some concurrence between the defendant's threat of force and the taking of the victim's property, a conviction for armed robbery is proper. *Lewis*, 165 Ill. 2d at 339, 651 N.E.2d at 88. In *Lewis*, the defendant killed the decedent and then took her key. The supreme court found that, given the series of events, there was a necessary concurrence between the defendant's use of force and the taking of the victim's property which supported an armed robbery conviction. *Lewis*, 165 Ill. 2d at 340, 651 N.E.2d at 88.

The State also cites *People v. Hampton*, 149 Ill. 2d 71, 594 N.E.2d 291 (1992), for the proposition that all that must be proved is that the crimes were committed simultaneously or as a part of the same criminal episode. *Hampton*, 149 Ill. 2d at 89, 594 N.E.2d at 299. In *Hampton*, the defendant piled the victim's valuables by the door before killing him and then took several of the decedent's possessions after killing him. *Hampton*, 149 Ill. 2d at 88, 594 N.E.2d at 298-99.

Both *Lewis* and *Hampton* are inapposite. First, defendant, in the instant case, unlike in both *Lewis* and *Hampton*, received the title from Valadez without and before using either force or the threat of force. Valadez, the complaining witness, testified that he handed the title to defendant when defendant asked for it. Second, unlike in both *Lewis* and *Hampton*, there was no concurrent or simultaneous taking in the instant case. On the contrary, the receipt of the title in the instant case was a totally separate act. Defendant exited the car and left after he acquired the title from Valadez and then returned and engaged in the use of force that forms the predicate for defendant's aggravated vehicular hijacking charge. Also, in the instant case, unlike in *Lewis* and *Hampton*, the force that was used to take the vehicle occurred after and separately from the receipt of the title. In *Lewis*, the defendant used force and then took the decedent's property. *Lewis*,

165 Ill. 2d at 316, 651 N.E.2d at 77. In *Hampton*, the defendant started to take some of the victim's belongings by piling them up prior to his use of force to kill the victim and continued to take other property of the decedent after the killing. *Hampton*, 149 Ill. 2d at 88, 594 N.E.2d at 296.

Accordingly, we reverse defendant's armed robbery conviction.

## II

■ Defendant next asserts that his 10-year sentence for aggravated vehicular hijacking was excessive. The trial court merged defendant's armed robbery conviction with his aggravated vehicular hijacking conviction and sentenced him to 10 years' imprisonment. Defendant does not appeal his conviction as to aggravated vehicular hijacking, but does appeal the trial court's imposition of a 10-year sentence for the offense. While we affirm defendant's aggravated vehicular hijacking conviction, we remand his conviction for this offense for resentencing.

The State argues that it is clear from the record that the trial court did not consider the armed robbery conviction in imposing the 10-year sentence for the aggravated vehicular hijacking conviction. We disagree. Notably, the trial court stated that the jury found defendant guilty of "two very serious charges, armed robbery and aggravated vehicular hijacking." The 10-year sentence is within the 7- to 30-year sentencing range (720 ILCS 5/18—4(a)(3), (b) (West 1996); 730 ILCS 5/5—8—1(a)(3) (West 1996)), and we are mindful that the trial court considered other factors in aggravation. We are also mindful that there were mitigating factors that the court also had for consideration. However, the court stated that defendant was convicted of "two very serious charges" and did not otherwise negate consideration of the armed robbery conviction, and the defendant no longer stands convicted of two serious offenses.

After reviewing the record, we cannot say that the trial court did not consider the armed robbery conviction in imposing the 10-year sentence in the instant case. Accordingly, we remand defendant's aggravated vehicular hijacking conviction for resentencing. See *People v. Alejos*, 97 Ill. 2d 502, 513-14, 455 N.E.2d 48, 53 (1983).

## III

■ Defendant contends that the retained attorney who prepared and filed his initial postconviction petition failed to provide him with adequate representation and that the resulting summary dismissal of his petition must be reversed and remanded for further proceedings. We disagree.

The Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West

1996)) (Act) permits summary dismissal of nonmeritorious petitions. *People v. Easley*, 192 Ill. 2d 307, 316 (2000). Appellate courts apply a *de novo* standard of review when reviewing summary dismissals of postconviction proceedings. *Easley*, 192 Ill. 2d at 316; *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000); *People v. Coleman*, 183 Ill. 2d 366, 388, 701 N.E.2d 1063, 1075 (1998).

Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Easley*, 192 Ill. 2d at 315-16; *Coleman*, 183 Ill. 2d at 380, 701 N.E.2d at 1071. At the dismissal stage of a postconviction proceeding, the circuit court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity which would necessitate relief under the Act. *Coleman*, 183 Ill. 2d at 380, 701 N.E.2d at 1071. And, although a postconviction petitioner is not entitled to an evidentiary hearing as a matter of right, this court has repeatedly stressed that a hearing is required whenever the petitioner makes a substantial showing of a violation of constitutional rights. *Cloutier*, 191 Ill. 2d at 397; *Coleman*, 183 Ill. 2d at 381, 701 N.E.2d at 1072. To accomplish this, the allegations in the petition must be supported by the record in the case or by accompanying affidavits. *Coleman*, 183 Ill. 2d at 381, 701 N.E.2d at 1072. Moreover, at the dismissal stage of a postconviction proceeding, all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Cloutier*, 191 Ill. 2d at 397; *Coleman*, 183 Ill. 2d at 385, 701 N.E.2d at 1073. Also, a court may properly dismiss a postconviction petition if the record of proceedings at trial shows the petition to be nonmeritorious. *People v. Jones*, 66 Ill. 2d 152, 157, 361 N.E.2d 1104, 1106 (1977). Furthermore, nonfactual and nonspecific assertions that merely amount to conclusions are not sufficient to require a hearing under the Act. *Coleman*, 183 Ill. 2d at 381, 701 N.E.2d at 1072. The function of the pleading under the Act is to determine whether the petitioner is entitled to a hearing. The dismissal of a postconviction petition is warranted only when the allegations of fact, liberally construed in favor of the petitioner and in light of the original trial record, fail to make a substantial showing of imprisonment in violation of the state or federal constitution. *Coleman*, 183 Ill. 2d at 382, 701 N.E.2d at 1072.

In the case *sub judice*, defendant/petitioner's privately retained postconviction counsel filed a petition for a postconviction hearing alleging that defendant was unable to pursue any remedies for postconviction relief due to a number of limitations; defendant was unduly influenced and affected by a misleading investigation at the time and defendant signed a confession which hurt him; due to frustration subsequent to mental disorders and unfamiliarity with the criminal

justice system, defendant was unable to pursue his statutory cause of action in a timely manner; trial counsel was ineffective; a key witness who would have provided substantial testimony for the defense was never called; the complaining witness' inconsistent testimony was ignored during trial; defendant was coerced into signing various statements/confessions which were used against him; defendant was not proven guilty beyond a reasonable doubt; and the verdict was based on evidence that did not exclude every reasonable hypothesis consistent with the defendant's innocence. Defendant/petitioner's privately retained attorney did not support the postconviction petition with affidavits or references to the record.

In summarily dismissing defendant's claim as frivolous and patently without merit, the trial court stated that defendant had waived the complaining witness and sufficiency of the evidence issues because they could have been addressed on direct appeal. The trial court further found that defendant's ineffective assistance of counsel claims, without any supporting affidavits or references to the record, were insufficient. And, as to the "key witness" allegation, the trial court deemed that defendant failed to identify the individual, present the nature of the testimony, and explain how it would have been of benefit to defendant.

On appeal, defendant/petitioner asserts that retained counsel's postconviction petition was so inadequate that it did not rise to the "reasonable level of assistance" mandated by the Post-Conviction Hearing Act because, *inter alia*, the petition was signed only by the attorney and not the petitioner, the petition was not supported by any affidavits or references to the record, and that postconviction counsel failed to set forth the identity of the key witness and the nature of his testimony. Moreover, defendant asserts that there was no proof that postconviction counsel ever communicated with defendant or reviewed the record. Defendant/petitioner asserts that retained counsel's inadequate representation caused the trial court to summarily dismiss his postconviction petition.

Specifically, defendant/petitioner contends that Supreme Court Rule 651(c) requires the postconviction counsel in the instant case to have amended the petition and that his failure to do so constitutes inadequate assistance of counsel. Supreme Court Rule 651(c) requires that appointed counsel at the trial level in a postconviction proceeding consult with the petitioner to ascertain his contention of deprivations of constitutional rights; examine the record of the proceeding at trial; and make any amendments to a *pro se* petition necessary for an adequate presentation of the petitioner's claims. 107 Ill. 2d R. 651(c); *People v. Owens*, 139 Ill. 2d 351, 359, 564 N.E.2d 1184, 1187 (1990).

Also, the petitioner in a postconviction proceeding is entitled to a "reasonable level of assistance." (Emphasis omitted.) *Owens*, 139 Ill. 2d at 364, 564 N.E.2d at 1189.

In support of his contention, defendant/petitioner cites *People v. Richmond*, 188 Ill. 2d 376, 721 N.E.2d 534 (1999). In *Richmond*, defendant filed a *pro se* petition and then later retained private counsel who elected to stand on the *pro se* petition without offering any amendments to it. Instead, the *Richmond* counsel argued that the sentence was excessive, a matter not in the purview of postconviction relief. On appeal, the Illinois Supreme Court held that Rule 651(c) was applicable whether appointed or privately retained counsel represented petitioners with previous *pro se* petitions and that, whether retained or appointed, counsel was required to consult with defendant on a *pro se* petition and make any necessary amendments to it. *Richmond*, 188 Ill. 2d at 381, 564 N.E.2d at 537.

In our view, however, *Richmond* is inapposite. Unlike *Richmond*, the issue in the instant case is not whether the attorney is court-appointed or privately retained. The issue is whether Rule 651(c) is applicable to postconviction petitions that are not *pro se* petitions. *Richmond* is inapposite because the petition in *Richmond* originated with a *pro se* petitioner whereas the petition in the instant case originated with retained counsel. Significantly, in *Richmond*, the Illinois Supreme Court wrote:

"We note that *** the appellate court has suggested that Rule 651(c) does not apply to retained counsel. See *People v. Zambrano*, 266 Ill. App. 3d 856, 867 (1994), *vacated in part on other grounds*, 159 Ill. 2d 579 (1995); *People v. Doggett*, 255 Ill. App. 3d 180, 187 (1993). In neither case, however, was the initial post-conviction petition filed *pro se*; rather, in both cases the initial petition was prepared and filed by counsel. By its own terms, then, the requirements of Rule 651(c) would not have been applicable in those settings." *Richmond*, 188 Ill. 2d at 382-83, 721 N.E.2d at 538.

The State contends, in the instant appeal, that Rule 651(c) covers *pro se* petitions which may need modification by appointed counsel and that there is no comparable coverage for professionally drafted postconviction petitions. We agree.

Accordingly, after reviewing the record and considering the law applicable to the instant case, we affirm the trial court's summary dismissal of defendant/petitioner's postconviction petition. Further, we hold that defendant/petitioner's postconviction claim is beyond the scope of Rule 651(c).

For the forgoing reasons, we reverse defendant's armed robbery conviction, remand for resentencing defendant's aggravated vehicular

hijacking sentence, and affirm the trial court's summary dismissal of defendant's postconviction petition.

Affirmed in part and reversed in part; cause remanded with directions.

McNULTY and McBRIDE, JJ., concur.